**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Olga Leza, | No. CV-20-01066-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Olga Leza's appeal from the Commissioner of the Social Security Administration's (SSA) denial of social security disability benefits. The appeal is fully briefed (Doc. 14, Doc. 15, Doc. 18), and the Court now rules.

**I.    BACKGROUND**

    **a.    Factual Overview**

Plaintiff was 59 years old at the time of her hearing. (AR 42). She has a high school education and past relevant work experience as a bank teller. (AR 188). Plaintiff filed her social security disability claim on April 20, 2016, alleging disabilities beginning on November 7, 2014, including hypertension (high blood pressure), difficulty standing and walking, and severe exhaustion. (AR 14, 17, 186). An ALJ denied Plaintiff's claim on February 8, 2019. (AR 25). The SSA Appeals Counsel denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (AR 1).

    **b.    The SSA's Five-Step Evaluation Process**

To qualify for social security benefits, a claimant must show she "is under a

disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find

that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (AR 17).

At the second step, the ALJ determined that Plaintiff's hypertension, chronic kidney disease, congestive heart failure, ventricular tachycardia, mild cervical spondylosis, obstructive sleep apnea, irritable bowel syndrome (IBS), and obesity constituted severe impairments under 20 C.F.R. 404.1520(c). (AR 17).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b) "except [Plaintiff] can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day." (AR 19). The ALJ also found that Plaintiff can occasionally climb ramps or stairs and frequently balance, stoop, kneel crouch, and crawl. (AR 19).

At the fourth step, the ALJ concluded that Plaintiff is able to complete past relevant work as a bank teller and, accordingly, concluded that Plaintiff has not been under a disability since the alleged onset date. (AR 24–25).

## II. LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

### III. DISCUSSION

Plaintiff argues that the ALJ erred by affording insufficient weight to the opinions of her medical treatment providers and her subjective symptom testimony. (Doc. 14 at 1). The Court addresses each in turn.

#### a. Medical Opinions

Plaintiff first argues the ALJ erred by affording "little weight" to the opinions of Dr. Salvatore Gillette, D.O.; Dr. Judith Hunt, M.D.; Dr. J.M. Morgan, M.D.; and Family Nurse Practitioner Lynne Vigil, who treated Plaintiff, and more weight to the opinions of state agency reviewing physicians. (*Id.* at 13–18). Drs. Gillette, Hunt, and Morgan opined that Plaintiff is limited to performing less than sedentary work due to her medical condition.

The weight that a particular opinion is afforded is based on who is giving that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Id.*; *see* 20 C.F.R. 404.1527(c)(1)–(2). But a treating

physician's opinion is not necessarily conclusive. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). If a treating physician's opinion is contradicted by another physician's opinion, an ALJ may reject it "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Here, the ALJ afforded little weight to opinions of Plaintiff's treatment providers, reasoning as follows:

> [T]heir assessments are excessively restrictive and quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. Their restrictions are not related to the objective findings in their examinations. Furthermore, the opinions of these providers contrast sharply with their course of treatment, thus rendering them less persuasive. . . . [T]reatment exams show normal findings with no joint or back pain or limitations from pain, no shortness of breath on exam, and no cardiovascular findings to demonstrate restrictions. Although Ms. Vigil and Dr. Gillette offer no function by function limitations,[1] there is no basis to suggest [Plaintiff] could not return to work when their examinations show no restrictions. Dr. Hunt's and Dr. Morgan's medical source statements asserting that [Plaintiff] cannot stand and walk more than two hours and is restricted to sitting for 3 or 4 hours is not supported by any medical evidence showing limitations to sitting, standing or walking. Again, the vast majority of the records show normal findings in objective examinations with no restrictions to movement.

(AR 23) (citations omitted). Further, the ALJ afforded "little weight" to FNP Vigil and Dr. Gillette's opinions that Plaintiff's medical condition prevents her from returning to work because "statements that a claimant is disabled, unable to work, can or cannot perform a past job, meets a listing or the like are not medical opinions but are administrative findings, requiring familiarity with the Regulations and legal standards." (AR 23–24).[2]

---

[1] Plaintiff argues the ALJ erred by failing to recognize that Dr. Gillette and FNP Vigil did in fact complete a function-by-function analysis. (Doc. 14 at 16). The ALJ, however, cited their function-by-function assessments in a parenthetical citation earlier in the paragraph when summarizing their opinions, and this indicates the ALJ considered the substance of the assessments. (AR 23, 888–90, 1217–19). But even if this does amount to error, the Court finds that any error is harmless in light of the ALJ's conclusion that "there is no basis to suggest [Plaintiff] could not return to work when their examinations show no restrictions." (AR 23). *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).

[2] This statement by the ALJ is consistent with 20 C.F.R. § 404.1527(d), which provides that "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the SSA] will determine that you are disabled" and that such statements

- 5 -

Here, the ALJ provided sufficiently specific and legitimate reasons for discounting the providers' opinions, and Plaintiff's arguments to the contrary are unpersuasive. Plaintiff argues that "it was error [for the ALJ to] to discount check-box questionnaires as insufficient to support the treating source assessments." (Doc 14 at 15). Although an ALJ may not discount an opinion simply because it was provided on a check-the-box form, *see Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017), an ALJ "may take into account the quality of the explanation when determining how much weight to give a medical opinion," *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020), and "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions," *id.* (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). In his residual functional capacity form, Dr. Gillette does not explain the basis for his opinion and supports his conclusions by stating that "[Plaintiff's] medical condition causes significant functional limitations as described above." (AR 863). Similarly, the form completed and signed by Dr. Hunt and FNP Vigil provides that Plaintiff "has had persistent uncontrolled, symptomatic hypertension" (AR 1219) and the form completed by Dr. Morgan provides that Plaintiff had "very difficult to control hypertension [and] some symptoms from the med[ications]" (AR 1145). The ALJ properly considered that these explanations did not justify the limitations provided in the forms.

Further, although the record also includes letters from Dr. Gillette and FNP Vigil in which they explain that they believe Plaintiff's symptoms were caused by uncontrolled hypertension (AR 859–60, 866), the ALJ properly considered the inconsistency between the providers' opinions and their treatment records. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (noting that "incongruity between [a doctor's opinion] and [his] medical records" is a "specific and legitimate reason for rejecting" the doctor's opinion). Here, the ALJ noted that FNP Vigil's examination notes between November 2015 and May

---

"are not medical opinions." *See, e.g., Aaron v. Astrue*, No. 1:07CV01303-SMS, 2008 WL 4502268, at *7 (E.D. Cal. Oct. 7, 2008) ("It is true that the ultimate issue of disability *vel non* is reserved to the Commissioner because a determination of whether or not a claimant meets the statutory definition of disability is a legal conclusion reserved to the Commissioner").

- 6 -

2016 provide that Plaintiff had "no shortness of breath" and "[n]o back pain, neck pain, joint pain, muscle pain, decreased range of motion," and that these records were inconsistent with shortness of breath and physical limitations FNP Vigil described in her opinion (AR 323, 327, 331, 334, 340, 852, 866).

Dr. Gillette's letter stated that he felt Plaintiff's "symptoms are mostly related to episodes of uncontrolled hypertension" and that she has had intolerances to medications. (AR 854, 859). The ALJ, however, addressed Plaintiff's medication intolerance and determined that "the medical records state that the elevations in [Plaintiff's] blood pressure are episodic and able to be resolved, sometimes even without treatment." (AR 20). The ALJ further noted the providers' opinions regarding Plaintiff's limitations were not supported by the objective medical evidence in the record. (AR 23). *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings). Specifically, the ALJ noted that Plaintiff's EKG and x-rays, ultrasounds, and other imaging of her chest and abdomen returned normal results. (AR 20–21, 354, 371, 374, 390-91, 395–96). Considering these records, the ALJ concluded that "there is no basis to suggest [Plaintiff] could not return to work when their examinations show no restrictions." (AR 23). The ALJ did not err by doing so.

Conversely, the ALJ afforded "great weight" to consultive examiner Kari Coelho, Psy.D., who diagnosed Plaintiff with unspecified anxiety disorder, but opined that this impairment is nonsevere and results in no more than minimal limitations. (AR 651–53). The ALJ also afforded "great weight" to a reviewing physician because the physician's "assessment [wa]s generally consistent with [Plaintiff's] subjective allegations and supported by objective medical and clinical findings, treatment records, and examination results" (AR 22–23, 63–77), which are appropriate criteria for the ALJ to consider. *See Zuniga v. Saul*, 801 F. App'x 465, 467 (9th Cir. 2019) (affirming where an "ALJ rejected the doctors' opinions because they were not supported by multiple reviewing physicians or objective medical evidence and relied uncritically on [the claimant's] self-reporting of the

severity of her symptoms and limitations").

### b. Subjective Symptom Testimony

Next, Plaintiff argues the ALJ erred by discounting Plaintiff's subjective symptom testimony. (Doc. 14 at 18–24).

At her hearing, Plaintiff testified that she stopped working in November 2014 following a fall in her home. (AR 45). She testified that she gets headaches daily for two hours at a time and sits or lays down until the headaches go away. (AR 48). She further testified that she has chest and back pain daily and the pain ranges from mild to profound. (AR 49–50). Additionally, Plaintiff testified that she performs limited housework and has trouble lifting and carrying items. (AR 52–56).

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

At the first step, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR 20). At the second step, however, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 20).

Plaintiff argues the ALJ applied an incorrect legal standard by requiring Plaintiff's

subjective symptom testimony be "entirely consistent" with medical evidence. (Doc. 14 at 19). The Court, however, does not read the ALJ's "not entirely consistent" language as requiring the Plaintiff to fully corroborate her symptom testimony with objective medical evidence; rather, the ALJ's statement merely notes that the record contains conflicting evidence as to the severity of Plaintiff's symptoms. And although Plaintiff is not required to provide medical evidence of the severity of her symptoms, *see Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (explaining "an adjudicator may not reject a Plaintiff's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"), the ALJ may properly consider objective medical evidence to assess Plaintiff's credibility regarding the intensity and persistence of her symptoms, *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (pointing to medical evidence as a relevant factor in determining severity of Plaintiff's pain and disabling effects).

Aside from her argument regarding the legal standard, Plaintiff also argues the ALJ erred by failing to "tie-in the characterization of the medical record with any particular symptom testimony." (Doc. 14 at 19). *See Burrell*, 775 F.3d at 1138 (noting that courts "may not take a general finding . . . and comb the administrative record to find specific conflicts"). Here, however, the ALJ did more than state that Plaintiff's testimony was "inconsistent in some unspecified way with her testimony at the hearing." *See id.* The ALJ noted that Plaintiff had "no residual symptoms" from her November 2014 fall and her examinations after the event were normal. (AR 20). The ALJ stated that Plaintiff's "maintenance exams for hypertension, chronic kidney disease, ventricular tachycardia and chronic heart failure appear to show few limitations" and her "lack of more aggressive medical treatment and/or surgical intervention suggests [Plaintiff's] symptoms and limitations are not as severe as alleged." (AR 21). The ALJ further found that "[a]lthough [Plaintiff's] activities of daily living illustrate some functional deficits, they are not to the level of severity related by [Plaintiff]." (AR 22). Specifically, ALJ noted that Plaintiff's ability to complete household chores and the description of plaintiff as "comfortable[] and

in no acute distress" throughout her medical records indicate that Plaintiff "is more able-bodied than she alleged." (AR 22). Accordingly, the ALJ did not commit legal error in discounting Plaintiff's subjective symptom testimony.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 11th day of May, 2021.

James A. Teilborg
Senior United States District Judge